Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 4/29/2024



# IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF TENNESSEE

IN RE:                                        )
                                              )
John Preston Thompson,                        )        Case No. 3:23-bk-04259
                                              )        Chapter 7
        Debtor.                               )        Judge Randal S Mashburn
_____

Teena Colebrook,                              )
        Plaintiff,                            )
                                              )
vs.                                           )        Adv. Proc. No. 3:24-ap-90025
                                              )
John Preston Thompson, et al.,                )
        Defendants.                           )


# MEMORANDUM OPINION
# IN SUPPORT OF ORDER RULING ON PLAINTIFF'S APPLICATION
# FOR *IN FORMA PAUPERIS* STATUS AND DISMISSING COMPLAINT

Plaintiff Teena Colebrook has requested the Court grant her *in forma pauperis* status and thus waive the prepayment of the adversary proceeding filing fee. (Doc. 5.)   For the reasons explained in more detail below, the Court will grant Ms. Colebrook's application for *in forma pauperis* status.   However, after pre-screening Ms. Colebrook's complaint as required by applicable law under these circumstances, the Court must summarily dismiss it for failure to state a claim.

Ms. Colebrook essentially alleges that debtor John Preston Thompson and named and unnamed "co-conspirators" are guilty of fraud for promising, but failing, to pay contractual debt dating back to 2012, or potentially inducing Ms. Colebrook to

invest with a false guarantee of repayment. Ms. Colebrook also asks that the related debt owed to her by Mr. Thompson be declared nondischargeable. As a threshold matter, Ms. Colebrook's underlying claims of fraud and conspiracy to defraud are time-barred based on the allegations included in the complaint. Since Ms. Colebrook cannot enforce the underlying debt, there is nothing for the Court to declare nondischargeable under 11 U.S.C. § 523(a).

## I.  Waiver of Prepayment of Filing Fee

The Court will first address the *in forma pauperis* application. Persons commencing adversary proceedings are required to pay a filing fee of $350 at the outset of the case. Although Congress in 28 U.S.C. § 1930(f)(2) expressly permitted the waiver of bankruptcy-related filing fees for debtors, there is no express provision for waiving adversary proceeding filing fees for creditor plaintiffs. Instead, § 1930(f)(3) provides that "[t]his subsection *does not restrict* the district court or the bankruptcy court from waiving, in accordance with Judicial Conference policy, fees prescribed under this section for other debtors and creditors." *Id.* (emphasis added). The Judicial Conference has not issued a policy about the waiver of adversary proceeding filing fees for creditors. *See* Bankruptcy Fee Compendium III (June 1, 2014 Edition).[1] As there is no applicable Judicial Conference policy, the Court may consider other sources of authority. *See Boles v. Collins* (*In re Collins*), No. 17-10049 (MEW), 2017 WL 979021, *2 (Bankr. S.D.N.Y. Mar. 10, 2017).

---

[1] Available at: https://jnet.ao.dcn/court-services/judges-corner/bankruptcy-judges/bankruptcy-fee-compendium.

One such source is 28 U.S.C. § 1915, which has been applied by bankruptcy courts within and without the Sixth Circuit. *See, e.g., id.* (applying § 1915(a) to an application for *in forma pauperis* status in connection with adversary proceeding filing fee); *In re Grodsky*, No. CV 19-14801, 2020 WL 1234430, at *4 (E.D. La. Mar. 13, 2020) (agreeing with other courts concluding that district courts and bankruptcy courts have authority to waive the filing fee for creditors who commence adversary proceedings in a bankruptcy case); *In re Byers*, 520 B.R. 246, 249–50 (Bankr. S.D. Ohio 2014) (applying § 1915(a) to an application for *in forma pauperis* status in connection with an appeal in an adversary proceeding); *In re Smith*, 499 B.R. 555, 556 (Bankr. E.D. Mich. 2013) (applying § 1915(a) to an application for *in forma pauperis* status in connection with an appeal in an adversary proceeding but noting split of authority as to bankruptcy court's authority under § 1915(a)).

Section 1915(a)(1) allows "any court of the United States [to] authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor." 28 U.S.C. § 1915(a)(1). Although "any court of the United States" does not by definition include bankruptcy courts,[2] some statutes applicable to "any court of the United States" have been applied equally to bankruptcy courts, because bankruptcy courts are units of district courts and they hear bankruptcy cases on referral from district courts. *Collins*, 2017 WL 979021 at *2-3. For example, the Sixth Circuit has

---

[2] For purposes of title 28, "court of the United States" is defined to include "the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior." 28 U.S.C. § 451.

a history of upholding bankruptcy court sanctions under 28 U.S.C. § 1927, which also refers to "court[s] of the United States" when granting sanctioning authority. *In re Blasingame*, 709 F. App'x 363, 370 n7 (6th Cir. 2018) (noting and following the Sixth Circuit's practice in a series of unpublished opinions finding that bankruptcy courts may issue sanctions under 28 U.S.C. § 1927). The Court sees no reason why the Sixth Circuit would view extending authority to bankruptcy courts under 28 U.S.C. § 1915 any differently than for 28 U.S.C. § 1927.

"Section 1915 is intended to ensure that indigent persons have equal access to the judicial system by allowing them to proceed without having to advance the fees and costs associated with litigation." *Franklin v. Johnson Control/Adient*, No. 3:19-CV-01174, 2020 WL 996913, at *1 (M.D. Tenn. Mar. 2, 2020) (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) and *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948)). Although § 1915 refers in some sections to prisoners, the ability to proceed *in forma pauperis* as provided in § 1915(a)(1) and the screening procedure established by § 1915(e)(2) also apply to non-prisoner litigants. *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

A person seeking to proceed *in forma pauperis* is required to submit an affidavit stating all assets and showing that the person is unable to pay the litigation fees. 28 U.S.C. § 1915(a)(1). There is no minimum financial threshold to meet, but instead the decision of whether to permit a person to proceed with suit *in forma pauperis* is within the Court's discretion. *Flippin v. Coburn*, 107 F. App'x 520, 521

(6th Cir. 2004) (citing *Phipps v. King*, 866 F.2d 824, 825 (6th Cir. 1988)). The issue for the court to determine is whether the fee can be paid without undue hardship. *Foster v. Cuyahoga Dep't of Health and Human Servs.*, 21 F. App'x 239, 240 (6th Cir. 2001).

Ms. Colebrook declares under penalty of perjury in her application that she is 67 years old, and she has $75.83 in her checking account and no other assets of value. She swears that her income and other financial benefits total $860 per month and she has expenses of $835 per month, leaving a net balance of $25 per month. The $350 filing fee is nearly half of Ms. Colebrook's monthly income. If she actually has $25 left over every month after payment of living expenses, it would take her fourteen months to save the funds necessary for the filing fee.

The Court finds that Ms. Colebrook is indigent and cannot pay the $350 adversary proceeding filing without undue hardship. The Court will allow her complaint to be filed *in forma pauperis*, without prepayment of the fee.

Unfortunately for Ms. Colebrook, being allowed to file her complaint does not automatically mean that she may proceed with pursuing her claims against Mr. Thompson and others in this litigation.

## II. Screening of the Complaint

Because Ms. Colebrook filed her complaint *in forma pauperis*, the same statute that allows her to do so mandates that the Court review the complaint and dismiss it if the Court determines that it "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii) ("the court *shall* dismiss the case at any time if the court

determines that [the action] fails to state a claim on which relief may be granted")
(emphasis added).  The word "shall" in that subsection of the statute is crucial.  This
is not a discretionary role for the Court.  While it can sometimes be uncomfortable for
a court to apply this level of scrutiny to a *pro se* indigent plaintiff's complaint at the
early stages of a lawsuit without any prompting by a defendant, that is precisely what
the statute requires.

Even though the pre-screening requirement presents an initial hurdle that
non-indigent filers do not face, it serves judicial efficiency and spares the plaintiff
from pursing and defendant from defending a claim that cannot go the distance.  *See
Horan v. Fuqua*, No. 122CV01121JDBJAY, 2022 WL 4594561, at *1 (W.D. Tenn.
Sept. 13, 2022) (explaining that a plaintiff cannot proceed *in forma pauperis* with a
meritless complaint, as it would be an improper use of judicial resources and interfere
with the orderly administration of justice, and, as such, it would be incompatible with
the "privilege" of proceeding *in forma pauperis*).

### A. Standard of Review

The standard for dismissal for failure to state a claim under § 1915(e)(2)(B)(ii)
is the same as applied to motions to dismiss pursuant to Rule 12(b)(6) of the Federal
Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).  To
adequately state a claim under Rule 12(b)(6), "a complaint must contain sufficient
factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007)).  The Court is required to "draw all reasonable inferences in

favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). However, it is not enough to allege facts that show a "mere possibility of misconduct" or "that are merely consistent with a defendant's liability." *Ashcroft*, 556 U.S. at 678–79 (internal quotation marks omitted).

Additionally, the court need not consider mere recitals of the elements or conclusory legal statements. *Id.* at 678. The plaintiff must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678). This pleading standard is construed liberally, *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020) – all the more so because Ms. Colebrook is acting *pro se*.

"'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Notwithstanding the "less stringent standard," the *pro se* plaintiff is not relieved of basic pleading requirements. *Perry v. United Parcel Serv.*, 90 F. App'x 860, 861 (6th Cir. 2004). The complaint must still contain direct or inferential allegations respecting all the material elements to sustain a recovery under some viable cause of action. *Id.* "[T]he less stringent standard for pro se plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations." *Id.*

## B. The Complaint

Ms. Colebrook's complaint is not broken down into specific counts or causes of action. The only statute Ms. Colebrook refers to is 11 U.S.C. § 523 and specific subsections of § 523.[3] She confuses the terms "objecting to discharge" and "requesting a declaration that debt is nondischargeable or not subject to discharge." Section 727 of the Bankruptcy Code applies to the former, and § 523 applies to the latter. Ms. Colebrook alleges that Mr. Thompson "is not eligible for discharge as debtor in his bankruptcy case pursuant to 11 U.S.C. 523 (a) (2) (a) (b) and 4 (6) and any other the court sees fit." (Complaint, Doc. 1, pp. 3-4.[4]) The Court interprets this to mean that Ms. Colebrook seeks the debt owed to her to be declared nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6).

Factually, Ms. Colebrook alleges that she invested $15,000 with John Forbes, Inc. dba SevenX Investments ("SevenX") "in consideration of acquiring the right to share in the profit for the sale of 231 Polk Dr. Franklin TN 37064" pursuant to a contract titled "Investor Financing Agreement" dated July 6, 2012, which is attached to the complaint.[5] (*Id.*, p. 5, lines 2-8; Ex. A.) She alleges that she was promised a return of $30,000 upon sale of the property, but she does not say who made that

---

[3] Ms. Colebrook also mistakenly references Fed. R. Bankr. P. 4004, which applies to actions under 11 U.S.C. § 727. The Rule applicable to actions under § 523 is Fed. R. Bankr. P. 4007.

[4] Because the exhibits to the complaint are attached to it and lack page numbers, for ease of reference to the exhibits, the Court will cite to the pages of Doc. 1 as numbered by CM/ECF in the document footer. The page numbers plaintiff included in the few pages of the complaint document will be disregarded.

[5] Exhibits to the complaint are "a part of the pleading for all purposes." Fed. R. Bankr. P. 7010; Fed. R. Civ. P. 10(c).

promise or when it was made. It appears to have been incorporated into her contract with SevenX. The Investor Financing Agreement provides:

> 1) Repayment of Investment; Share of Profits: In consideration of the Investor making the above financial contribution, SevenX shall pay or cause to be paid to the Investor the amount of Thirty Thousand, $30,000.

(*Id.*, Ex. A, p. 10.)

Ms. Colebrook alleges she made a similar investment of $20,000 with SevenX related to the purchase of another property at 1563 Shining Ore Drive, Brentwood, TN 37027. She alleges she was promised a return of 50% of sale proceeds, but she again does not say who made that promise or when it was made. She signed a similar Investor Financing Agreement dated September 8, 2012, which includes the promise:

> 1) Repayment of Investment; Percentage Share of Profits: In consideration of the Investor making that financial contribution, SevenX shall pay or cause to be paid to the Investor the following:
>
> a) Net Profit Participation: Fifty Percent (50%) of net home sale proceeds. Net proceeds are computed as profit remaining after the deduction of estimated capital gains taxes incurred by SevenX. SevenX recognizes profit after deductions for all hard costs, capital gains and commission expenditures.

(*Id.*, Ex. A, p. 13.)

Other than attaching the two Investor Financing Agreements, Ms. Colebrook makes no reference to SevenX in her complaint, nor does she explain Mr. Thompson's connection with SevenX. At best, the Court can draw the inference that Mr. Thompson, Warren Forbes, and Steve Huffman were affiliated with SevenX based on one of the attached email excerpts, described below, which was allegedly signed "Warren, Steve and Preston" followed by this block of text:

JohnForbes, Inc. dba SevenX Investments
Warren Forbes [phone number]
Steve Huffman [phone number]
John Preston Thompson [phone number]

(*Id.*, p. 18.) We do not know Mr. Thompson's role with SevenX, whether he had any authority, or whether he played any role in obtaining $35,000 from Ms. Colebrook. Throughout her complaint, Ms. Colebrook ties Mr. Thompson, Mr. Forbes, and Mr. Huffman together by referring to them as "co-conspirators."

In conclusory fashion, Ms. Colebrook alleges Mr. Thompson, with intent to defraud, misused the money she invested in the two properties. (*Id.*, p.7.) She alleges that Mr. Thompson "knowingly and willingly utilized intentionally false and deceptive tactics to induce Plaintiff to invest in their scheme and instead used the money for their own personal use or to further other fraudulent schemes." (*Id.*, p. 5.) She does not then describe the allegedly false and deceptive tactics committed by Mr. Thompson.

The only allegedly false statement she identifies in her complaint is her allegation that Mr. Thompson and his co-conspirators "intentionally [made] a false misrepresentation … of their ability to sell the properties in order to repay Plaintiff the agreed upon profit." (*Id.*) She does not specify who made this representation. She does not include any allegations to show the statement was false, such as that the properties were not in fact sold, not sold for a profit, or were sold for a profit and the profit was not shared with her per her contract.

Ms. Colebrook goes on to allege that "[u]pon information and belief Plaintiff asserts that because Defendant and his co-conspirators started making excuses about

the two properties soon after the investments were made in 2012 that they never actually used Plaintiffs money for the intended investments." As further support for this allegation, Ms. Colebrook alleges that at various points in time after her investment that Mr. Thompson promised that he or "his co-conspirators" (i.e., Mr. Forbes and Mr. Huffman) would repay her and would not file bankruptcy.

She attaches what appear to be "cut and paste" excerpts of emails from July 6, 2012, to September 16, 2021, between herself and Mr. Huffman and other persons not including Mr. Thompson.[6] The Court will infer that Ms. Colebrook alleges the emails were sent on the dates stated and by the persons identified by name or email address. There are no email communications from Mr. Thompson.

The only communication from any of the alleged co-conspirators that predates her investments, and thus might be viewed as an inducement to invest, was sent July 6, 2012, by Mr. Huffman. In it, Mr. Huffman stated:

> We are very careful on any house that we take on to nullify the mortgage, so we don't expect for it not to work. I will tell you that we have never told a investor that if it don't work you will get your money back but in your case <u>if for what ever reason, something goes wrong on the investment I will honor you investment and put your money on another house.</u>
>
> I think we could have a good working relationship and you could help us bring in some deals or individuals such as Travis so I feel comfortable doing the guarantee with you.

---

[6] The Court infers that stevemitm@gmail.com is Mr. Huffman's email address. The emails are not otherwise shown to be with him.

(*Id.*, p. 17 (mistakes and emphasis original to complaint).) Notably, in this email Mr. Huffman did not guarantee repayment but said he would "put [Ms. Colebrook's] money on another house."

The subsequent emails dating from 2013 – 2021, after her investment, can be summarized as demands for payment by Ms. Colebrook and assurances of repayment by Mr. Huffman or Mr. Forbes. There are no communications from Mr. Thompson. Mr. Thompson is only included by reference: Mr. Huffman states in a couple of emails that Mr. Thompson would be the one to send Ms. Colebrook a payment.

Finally, Ms. Colebrook focuses a good bit of her complaint on asserting that Mr. Thompson had the money to "fullfil[] his/their written promise and guarantee to repay [her]," but instead he purchased investment property and luxury items and started other businesses. She claims that living lavishly while "claiming he did not have the money to pay Plaintiff" is "intentional fraud and deceit." (*Id.*)

### C. Analysis of Complaint for Stating a Claim on Which Relief May Be Granted Against Mr. Thompson

The Court will next examine whether Ms. Colebrook's allegations adequately state a claim: first for debt owed to her by Mr. Thompson, and, if any, then for finding that debt nondischargeable under any of the referenced subsections of 11 U.S.C. § 523. Every dischargeability proceeding involves two separate inquiries. *In re Roland*, 294 B.R. 244, 249 (Bankr. S.D.N.Y. 2003). The Court must first determine whether the creditor holds an enforceable obligation under non-bankruptcy law. *Id.*; *In re Conley*, 482 B.R. 191, 207 (Bankr. S.D. Ohio 2012) ("In order to establish the nondischargeability of a debt, the creditor must first show the existence of a debt

under state law."). If that's answered in the affirmative, the court next determines whether the debt is nondischargeable under § 523(a). *Roland*, 294 B.R. at 249. "In the absence of an enforceable obligation, there is no "debt" that can be non-dischargeable." *Id.*

### 1. Is There Enforceable Debt?

As a threshold matter, for debt to be excepted from discharge, there must be enforceable debt. Ms. Colebrook's 2012 contracts are with a corporate entity, not Mr. Thompson. She seeks to hold him personally liable based on fraud or conspiracy to defraud. Ms. Colebrook has not previously obtained a judgment against Mr. Thompson for fraud or conspiracy, but instead she would need this Court to enter one as part of its nondischargeabilty determination.

### a. Claims Are Barred by Statutes of Limitations

To the extent Ms. Colebrook adequately states a claim for fraud or conspiracy to defraud, which the court need not examine, her claims are now time-barred.

Generally, failure to meet the statute of limitations is considered an affirmative defense, but the court may dismiss a claim under Rule 12(b)(6) when "the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). When the complaint shows on its face that a claim would be time-barred without the benefit of the discovery rule, the plaintiff must specifically plead facts to show why the statute of limitations should be tolled. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992) ("When it affirmatively appears from the face of the complaint that the time for

bringing the claim has passed, the plaintiff cannot 'escape the statute by saying nothing.'"). Based on the allegations in Ms. Colebrook's complaint, the Court finds that she has not pursued her claims of fraud and conspiracy to defraud within the applicable statute of limitations.

To determine the statute of limitations, the Court looks to state law and must determine which state's law to apply. A bankruptcy court applies the choice of law of the state with the most significant contacts. *Limor v. Weinstein & Sutton* (*In re SMEC, Inc.*), 160 B.R. 86, 91 (M.D. Tenn. 1993). The two states whose law might apply are Tennessee and California. Tennessee is where the Debtor resides and the forum for the Debtor's bankruptcy case; it is the state's law the parties chose to apply to their contracts; and it is where the contracts were to be performed. California is where the plaintiff resides and resided during all times relevant to the claims. The Court need not determine which of these two states has the most significant contacts, however, because under either state's law Ms. Colebrook's fraud and conspiracy to defraud claims have expired. *See In re Appalachian Fuels, LLC*, 493 B.R. 1, 18 (B.A.P. 6th Cir. 2013) (a choice of law analysis need only occur when there is "an actual conflict between the … law of the interested jurisdictions").

### (i)    Fraud Claim

Both Tennessee and California have a 3-year statute of limitations for fraud claims. Tenn. Code Ann. § 28-3-105(1); Cal. Civ. Proc. Code § 338(d). Under Tennessee law, a cause of action for fraud or intentional misrepresentation accrues when a plaintiff discovers, or in the exercise of reasonable care and diligence, should

have discovered, her injury and its cause. *Ne. Knox Util. Dist. v. Stanfort Const. Co.*, 206 S.W.3d 454, 459 (Tenn. Ct. App. 2006). Similarly, a cause of action for fraud under California law accrues upon plaintiff's discovery of the facts constituting fraud. Cal. Civ. Proc. Code § 338.

The discovery rule does not require full knowledge that fraud or conspiracy to defraud have occurred. Instead, the discovery rule only requires some knowledge that plaintiff has suffered an injury due to "wrongful" conduct to put her on notice of the need to investigate, also referred to as inquiry notice. *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012) ("[A] cause of action accrues and the statute of limitations begins to run not only when the plaintiff has actual knowledge of a claim, but also when the plaintiff has actual knowledge of facts sufficient to put a reasonable person on notice that [she] has suffered an injury as a result of wrongful conduct.") (citations and internal quotation marks omitted); *Britton v. Girardi*, 185 Cal. Rptr. 3d 509, 512 (2015) (stating that it is a "timeworn principle" that the fraud statute of limitations starts running when there are facts sufficient to put one on inquiry notice). "The discovery rule will not protect claimants who ignore readily available information and do not investigate what they know or have reason to suspect." *Maestas v. Sofamor Danek Grp., Inc.*, No. 02A01-9804-CV-00099, 1999 WL 74212, at *3 (Tenn. Ct. App. Feb. 16, 1999), aff'd, 33 S.W.3d 805 (Tenn. 2000).

Next the Court must consider whether the allegations of the complaint show that the fraud claim is time-barred. Ms. Colebrook is claiming fraud in relation to contracts she entered into approximately 12 years ago and under which she expected

payment at least as of July 2013 – approximately 11 years ago – based on her emails with Mr. Thompson and others.[7] She has not pleaded facts to show why the applicable three-year statute of limitations should be tolled, and the facts she has pleaded show that even if tolling were applied until she should reasonably have discovered fraud in 2013 – 2015, the statute has still expired.

Ms. Colebrook invested money with SevenX in 2012. The restated email communications attached to Ms. Colebrook's complaint show that as early as February 2013, Ms. Colebrook was seeking payment on her investment. Multiple demands by Ms. Colebrook and assurances of payment by Mr. Huffman or others followed from 2013 – 2021, including the following.

In November 2013, Ms. Colebrook wrote to Mr. Huffman:

I haven't had a payment since September, this is not acceptable, we had a guarantee that I would be paid back and you are not following through or communicating with me. This is a BIG PROBLEM to me. You have two months of payments to catch up on by the end of this month, please advise ASAP, I have been extremely patient but missing two month of payments is not acceptable.

If I do not hear from you by Thursday I will have to assume you have decided to renege on your contract and word.

(Compl., Doc. 1, p. 21.)

In April 2014, Ms. Colebrook wrote to Mr. Huffman:

Still no payment. This is really getting beyond a joke all I get is false promises of payments. You need to just tell him straight that you have no intention of ever paying me back for the life savings I trusted and invested with you because of the guarantee. It is clear to me that you have no intention of paying me as I have given you every opportunity of

---

[7] In February 2013, Ms. Colebrook emailed Mr. Hughes insisting that at least $20,000 be delivered by July. (Compl., Doc. 1, p. 16.)

paying a small regular amount each month so until it is paid but you fail
to do that and just promise a payment will be made and it never is.

(*Id.* p. 22.)

In August 2015, Ms. Colebrook wrote:

IT is very frustrating to have put my trust in you and have the
"guarantee of payment with interest" and to have to constantly keep
asking for payments promised yet be given crumbs. I am sure you would
feel the same way if I had done this to you. The only reason I did the
investment was because of the guarantee of full payment and this is not
happening."

(*Id.* p. 23.)

Ms. Colebrook voiced her suspicions that Mr. Thompson and the other persons

with SevenX had no intention of paying her back or honoring their contract and that

their alleged "guarantee" was potentially false and fraudulent as early as 2013, or,

under a more conservative reading, August 2015. She recognizes in her complaint

that the fact that "Defendant and his co-conspirators started making excuses about

the two properties soon after the investments were made in 2012" was an indication

that "they never actually used Plaintiffs money for the intended investments." (*Id.*,

p.4.)

Therefore, the complaint shows that by August 2015 at the latest – and under

a very generous reading – Ms. Colebrook was aware of her injury due to potential

fraud. Under Tenneseee or California law, the statute of limitations for any fraud

claim expired three years later, so August 2018 at the latest. Ms. Colebrook did not

pursue her fraud claim until this nondischargeabilty adversary proceeding, which she

filed in February 2024. Any claim for fraud against Mr. Thompson is now time-

barred. Therefore, Ms. Colebrook does not have an enforceable obligation and there

is no debt to be declared nondischargeable.  Since her fraud claim is time-barred, she cannot state a claim for relief.

### (ii)    Conspiracy to Defraud Claim

Both Tennessee and California apply the statute of limitations applicable to fraud claims to conspiracy to defraud claims.  *See Findley v. Hubbard*, No. M201701850COAR3CV, 2018 WL 3217717, at *8 (Tenn. Ct. App. July 2, 2018) (To determine the statute of limitations for conspiracy, the court looks to the gravamen of the complaint.  When the claim is conspiracy to defraud, the three-year statute of limitations for fraud applies.); *Maheu v. CBS, Inc.*, 247 Cal. Rptr. 304, 310 (Cal. Ct. App. 1988) ("In an action based on civil conspiracy, the applicable statute of limitations is determined by the nature of the action in which the conspiracy is alleged."); *Singh v. Bank of Am., N.A.*, No. G053029, 2017 WL 2117279, at *5–7 (Cal. Ct. App. May 16, 2017) ("When a complaint alleges a conspiracy based upon fraud, the action is accordingly governed by section 338, which sets forth a three-year period of limitations.").  However, the three-year period is calculated somewhat differently with conspiracy.

The statute of limitations for conspiracy begins to run from the "last overt act." *Emerson v. Machamer*, 431 S.W.2d 283, 286 (Tenn. 1968); *Wyatt v. Union Mortgage Co.*, 598 P.2d 45, 53 (Cal. 1979).  It is not continued suffering that matters, but continued acts in furtherance of the conspiracy that cause the suffering.  *Emerson*, 431 S.W.2d at 286.

In this case, if one assumes that Mr. Thompson, Mr. Huffman and others conspired to defraud Ms. Colebrook, the last overt act in furtherance of the conspiracy was when they obtained the $20,000 from Ms. Colebrook in September 2012. Unless discovery tolling applies, the three-year statute of limitations would have expired in September 2015.

Under Tennessee and California law, the plaintiff would have the benefit of the discovery rule to toll the statute of limitations for conspiracy to defraud when the discovery occurs after the last overt act. *Blakeney v. Kassel*, 1991 WL 87978, at *3–4 (Tenn. Ct. App. May 30, 1991) (interpreting *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487 (Tenn. 1975) and *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982) as clear indication from the Tennessee Supreme Court that the discovery rule be applied to all torts, and suggesting that it trumps the last overt act rule for conspiracy claims when discovery occurs after the last overt act); *Aaroe v. First Am. Title Ins. Co.*, 271 Cal. Rptr. 434, 436 (Cal. Ct. App. 1990) ("In cases in which it is alleged the fraud was not discovered until less than three years prior to the filing of suit, section 338(d) directs the action may be timely despite the fact that the last overt act is more than three years old."). As discussed above, Ms. Colebrook was on notice of potential wrongdoing no later than August 2015. To the extent the discovery rule tolls the three-year statute of limitations, it does not do so beyond August 2018.

Because the statute of limitations to assert a conspiracy to defraud claim against Mr. Thompson has expired, Ms. Colebrook has not stated a claim for which relief may be granted and she can have no enforceable debt.

## 2. Conclusion as to Claims Against Mr. Thompson

Since Ms. Colebrook's claims against Mr. Thompson are now unenforceable due to being barred by the statute of limitations, she has no debt to be declared nondischargeable. Her complaint against Mr. Thompson is dismissed.

### D. Ms. Colebrook's Complaint Against Other Defendants

In addition to Mr. Thompson, Ms. Colebrook names as defendants John Steve Huffman, Warren Forbes, and "John Does 1 – 10." Although Ms. Colebrook may have claims against additional persons related to the investments alleged in her complaint, this complaint is for declaration of debt owed by Mr. Thompson to be nondischargeable under 11 U.S.C. § 523 and Mr. Thompson is the only proper defendant.[8] Ms. Colebrook's claims against these other defendants related to the dischargeability of any debt owed by Mr. Thompson to Ms. Colebrook are dismissed for failure to state a claim.

Ms. Colebrook also alleges generally that Mr. Huffman, Mr. Forbes, and John Does 1 – 10 are co-conspirators in an attempt to defraud her. Ms. Colebrook fails to state why this Court has jurisdiction over those claims or these additional defendants. For the Court to have jurisdiction over Ms. Colebrook's claims against these individuals, the claims must arise under title 11, or arise in or be related to Mr. Thompson's bankruptcy case. 28 U.S.C. § 1334(b). Ms. Colebrook is a creditor asserting state law fraud or conspiracy claims against non-debtor third parties. The

---

[8] The Court notes that Mr. Huffman has also filed bankruptcy in this District, and Ms. Colebrook has also filed a complaint against Mr. Huffman in his bankruptcy related to the dischargeability of his debt. The Court addressed that complaint separately, and this order has no impact on that litigation.

only relationship to Mr. Thompson's bankruptcy case is that Ms. Colebrook alleges that these other individuals conspired with Mr. Thompson to defraud.

To the extent a conspiracy claim sufficiently relates Ms. Colebrook's claims against these other individuals to her claims against Mr. Thompson such that the Court can exercise jurisdiction, the Court declines to do so and abstains pursuant to 28 U.S.C. § 1334(c)(1). The Court sees no compelling reason to expand what is essentially a claim that Mr. Thompson's debt to Ms. Colebrook is nondischargeable pursuant to bankruptcy law into a broader action under state law for fraud or conspiracy to defraud against multiple other defendants. This is especially true when such claims likely would be time-barred for the same reason as Ms. Colebrook's fraud and conspiracy claims against Mr. Thompson. Additionally, with the Court dismissing Ms. Colebrook's complaint against Mr. Thompson, her claims against the alleged co-conspirators can hardly be related to Mr. Thompson's bankruptcy case. The Court abstains from hearing any claims against any of these other defendants. To the extent Ms. Colebrook can state a claim against them, state court is the more appropriate forum.

Any claims that Ms. Colebrook has attempted to assert in this complaint against John Steve Huffman, Warren Forbes, and John Does 1 – 10 are therefore dismissed without prejudice.

### III.  Conclusion

For the reasons explained herein, the Court grants Ms. Colebrook's application to proceed *in forma pauperis* and accepts her complaint without prepayment of the

adversary proceeding filing fee. However, because Ms. Colebrook waited long past the statute of limitations to assert fraud and conspiracy to defraud claims against Mr. Thompson, her complaint against Mr. Thompson is dismissed. Ms. Colebrook's complaint against the other defendants is dismissed without prejudice due to the Court's lack of jurisdiction and/or abstention. An appropriate order will be entered.

IT IS SO ORDERED.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.